CITY OF BANGOR *versus* INHABITANTS OF BREWER.

Where a pauper is absent from the place of his domicil, and is temporarily
in another town, and while there forms an intention to remove to and re-
side in a third town, but, instead of doing so, remains for a longer time at
his temporary abode, this is not sufficient to break up the continuity of his
residence in the place of his domicil.

Declarations made by a pauper whilst temporarily in a town away from the
place of his domicil, indicating an intention to remove to and reside in still
another town, not having been carried into execution, are inadmissible in
evidence.

ON EXCEPTIONS from the ruling of APPLETON, J.

ASSUMPSIT to recover for supplies furnished by the plaintiff
city to Ephraim W. Howe and family as paupers. Howe
lived in Brewer from 1843 till 1849 or 1850, except that in
1846, he took a job of work in Bangor, and moved there
with his wife for a few months, and then returned to Brewer;
soon afterwards hired with one Brastow in Orrington, and
went there with his family, leaving part of his furniture in
Brewer; remained some months, and then engaged to assist
in building a wharf for one Savage in Orrington, and subse-
quently returned to Brewer; in a few weeks took his wife to
Topsfield, where she remained all winter, but he returned to
Brewer, and worked there; and, after his wife's return in
the spring, he lived awhile longer in Brewer, and then remov-
ed to Bradley. He lived in Orrington, in all, nearly a year.

The defendants introduced Samuel Baker, who testified,
that while Howe lived in Orrington, he told the witness that
he was going to hire a house of Cushing in Frankfort, and
remove there, and keep boarders; also that he thought of
removing to Bangor. The plaintiffs objected to this testi-
mony; but it was admitted.

The defendants also introduced George O. Goodwin, who
testified, that he had a talk with Howe after he left Brewer,
and he said he should go where he could get work; also
another talk with him a few days before the trial, when he
said he had no object in coming back to Brewer, except to

get work. The plaintiffs objected, but this testimony was admitted.

The presiding Judge, amongst other instructions to the jury, instructed them, that if Howe left Brewer for Orrington for a temporary purpose, and with no intent to abandon his residence in Brewer, yet if he formed the intention while in Orrington to abandon Brewer, and after such intention was formed remained there, no matter whether for a longer or shorter time, such intention and his actual absence from Brewer would break up his continuity of residence, and prevent his gaining a settlement in Brewer, unless he lived there five years before or afterwards.

The verdict was for the defenants. The plaintiffs excepted.

*A. G. Wakefield,* for the plaintiffs.

The pauper moved to Brewer in 1843, and left that town in 1850. He was absent from Brewer part of 1846 and 1847, and the question is, with what intention, as, if he intended to return, his home remained in Brewer. *Wayne* v. *Greene,* 21 Maine, 357; *Brewer* v. *Linneus,* 36 Maine, 428; *Warren* v. *Thomaston,* 43 Maine, 406. The evidence, except that of Baker, shows that in removing to Bangor, and afterwards to Orrington, he intended to return, and left part of his furniture in Brewer. He was taxed in Brewer in 1846 and 1847.

The testimony of Baker, as to declarations made by Howe while in Orrington of his intention to remove to Bangor or Frankfort, are inadmissible, not being contemporaneous or coupled with any act in relation to his removal to or from Orrington, Bangor or Frankfort. It does not appear that Howe went to Frankfort, or saw Cushing. The declarations are no part of the *res gestæ.* On general principles, they were not admissible. 1 Greenl. Ev., 137. In pauper cases this principle has been rigidly adhered to. *Richmond* v. *Thomaston,* 38 Maine, 232; *Wayne* v. *Greene,* 21 Maine, 357. At the time of the conversation with Baker, the pauper was not in either of the towns interested in the declarations sought

to be proved. Had he declared his intention to remain in Orrington, his remaining there afterwards would have been acting out and illustrating the declarations. It being otherwise, they .should be excluded. *Bangor* v. *Brunswick,* 27 Maine, 351.

Goodwin's testimony, being a recital of past transactions and purposes, was not admissible. .Greenl. on Ev., c. 5, § 110; *Salem* v. *Lynn,* 13 Met., 544; *Haynes* v. *Boulter,* 24 Pick., 242.

The instruction to the jury, that the intention of the pauper, formed after he left Brewer, of removing to Bangor or Orrington, though not carried into effect, broke up the continuity of the residence, was incorrect. A change of domicil is not affected by an intention to remove, until that intention is carried out by actual removal. *Hallowell* v. *Saco,* 5 Maine, 144; *Greene* v. *Windham,* 13 Maine, 225; *Wayne* v. *Greene,* 21 Maine, 357.

*J. A. Peters,* for the defendants.

The testimony of witnesses to the declarations of Howe were admissible on two grounds:— 1st, as having a direct tendency to contradict the pauper's testimony, and 2d, the testimony of Baker was a part of the *res gestæ.* The pauper and his family were *in* Orrington, and, whether residing there, was a question of *intention.* His declarations during the time, as well as his conduct, would be more or less indicative of his intention, and hence were admissible. *Richmond* v. *Vassalborough,* 5 Maine, 396; *Baring* v. *Calais,* 11 Maine, 463; *Thorndike* v. *Boston,* 1 Met., 242.

The instructions were correct, upon principles long since established, and deducible from the cases already cited. Circumstances mark different cases with slight distinctions, where there is no substantial difference. The whole question is one of intention. If, while in Orrington, Howe made up his mind to remain there, or not to return to Brewer, and, in pursuance thereof, remained there, or away from Brewer, it was an abandonment of Brewer, and broke up his continuity of residence.

It can make no difference whether his intention is formed when he leaves or after he leaves. I go to Boston on a visit; I am not a resident there, but reside in Bangor, and am absent temporarily only. But, while in Boston, I determine to remain and reside there; I inform my friends of it, and do in fact remain there, say, ten years. Certainly my conduct and declarations of intention, made at the time, are admissible. No matter whether the time is ten years, ten days, or ten minutes. But, by the plaintiffs' construction, I must return to Bangor, and take a new start with new intentions. See 13 Met., 544; 3 Met., 199.

The opinion of the Court was drawn up by

MAY, J.—Assumpsit for supplies furnished by the plaintiffs to one Ephraim W. Howe and family. There was testimony tending to show that said Howe had resided in the defendant town for five years together, without having received, directly or indirectly, any support or supplies as a pauper during that period. It also appeared that, during these five years, the pauper went with his family into the town of Orrington and worked there for one Brastow, building a wharf, some four or five months, leaving a part of his household furniture in Brewer, to which place he intended to return.

During this temporary sojourn in Orrington, the pauper made declarations tending to show an intention of removing at some subsequent time, from that place to the town of Frankfort, and of making his permanent residence there. These declarations were offered in evidence by the plaintiffs, and, though objected to by the defendants, were admitted. It further appeared that the pauper did not, in fact, remove to Frankfort, but shortly afterwards returned to his residence in Brewer.

In view of these facts, the presiding Judge instructed the jury, in substance, that if the pauper formed the purpose while in Orrington, of moving to Frankfort, though he did not carry that purpose into effect by such removal, but remained in Orrington after such intention, for a longer or shorter time,

the continuity of residence for five years would be thereby broken up.

We think this instruction cannot be sustained; and that the declarations of the pauper, avowing his purpose of a subsequent removal from Orrington to Frankfort, not having been made upon the eve of, or in connection with any such act, were inadmissible. If an intention existed of removing to Frankfort, it was never executed. The first question is, whether the instructions were correct. No question is now better settled, than that, in order to break up an existing residence, such as the statute requires, there must be an act of removal from the place where it exists, accompanied by an intention of the pauper to remain permanently at the place of removal or at some other place, or, at least, the pauper must be without any present intention of returning to the place from which he removed;—and such intention must be simultaneous with the act of removal, or in some way connected with an actual residence in another place. *Warren* v. *Thomaston*, 43 Maine, 406. An unexecuted intention of the pauper, while in Orrington, to take up a permanent residence in Frankfort, unaccompanied with any act, can legally have no more effect upon the pauper's statute residence in Brewer, than if the same intention had been formed by the pauper while residing personally with his family in Brewer, and never executed. The instruction upon this point was therefore erroneous. It is unnecessary to consider any other.

In regard to the declarations of the pauper, they were clearly inadmissible, except so far as they might tend to contradict the pauper as a witness in other respects. At the time they were made, the statute residence of the pauper, necessary to gain a settlement in this mode, was running on, and the personal presence of himself and family was in Orrington, they being there only for a temporary purpose; and the declarations related to an act subsequently to be performed in Frankfort, but never, in fact, performed. They were therefore wholly disconnected with any act, and were not any part of any *res gestæ*. The authorities cited in de-

fence, and many more that might be cited, show that declarations thus disconnected with the performance of any positive act are inadmissible. We see no contradiction between these declarations and any material statement of his upon the stand.

If the pauper, while residing in Orrington, had made declarations expressive of an intention of his permanent residence there, it may be that such declarations would be admissible, as being connected with, and explanatory of, his actual residence then in that town; but of this we give no opinion, as it is not this case.                    *Exceptions sustained.*

TENNEY, C. J., RICE and CUTTING, JJ., concurred. KENT, J., concurred in sustaining the exceptions on the point that the evidence in question was inadmissible.